Kevin TUCKER v. ROBERTS-McNUTT, INC.

CA 99-823                                                    12 S.W.3d 640

Court of Appeals of Arkansas
Division IV
Opinion delivered February 16, 2000

*Cortinez Law Firm, P.L.L.C.*, by: *Christopher Anderson*, for appellant.

*Friday, Eldredge & Clark*, by: *Betty J. Demory*, for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant Kevin Tucker filed a workers' compensation claim against appellee Roberts-McNutt, Inc., alleging that he sustained a work-related back injury on May 23, 1997. The Workers' Compensation Commission denied benefits pursuant to its finding that Mr. Tucker failed to prove that he suffered a compensable injury on that date. The Commission acknowledged that Mr. Tucker suffered a disc herniation; however, it specifically found that he was not a credible witness and refused to accept his version of the accident that allegedly caused the herniation. Mr. Tucker now appeals, arguing that the Commission's decision to deny benefits is not supported by substantial evidence. We agree, and we reverse and remand for an award of benefits.

When the Commission denies coverage because the claimant failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm the Commission's decision if

its opinion displays a substantial basis for the denial of relief. *McMillan v. U.S. Motors*, 59 Ark. App. 85, 953 S.W.2d 907 (1997). In determining the sufficiency of the evidence to sustain the findings of the Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. *Weldon v. Pierce Bros. Constr.*, 54 Ark. App. 344, 925 S.W.2d 179 (1996). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *City of Fort Smith v. Brooks*, 40 Ark. App. 120, 842 S.W.2d 463 (1992). The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case de novo. *Tyson Foods, Inc. v. Disheroon*, 26 Ark. App. 145, 761 S.W.2d 617 (1998). However, while the Commission's findings are insulated to a certain degree from appellate review, its decisions are not, and should not be, so insulated that it would make appellate review meaningless. *Lloyd v. United Parcel Service*, 69 Ark. App. 92, 9 S.W.3d 564 (2000); and *see Patterson v. Lay, Inc.*, 66 Ark. App. 159, 992 S.W.2d 130 (1999).

At the hearing before the Commission, Mr. Tucker testified on his own behalf. He stated that he began working for the appellee, a waterproofing and roofing company, on January 3, 1995. Since that time, Mr. Tucker recalled experiencing problems with his back, and he gave an account of a specific, traumatic event that occurred on May 23, 1997. According to Mr. Tucker, at about 11:00 a.m. that day he was standing on top of some scaffolding they were erecting and he was pulling another section of scaffolding up with a rope. The section being hoisted caught on the scaffolding below, at which time he "pulled [his] back out."

After hurting his back, Mr. Tucker came down from the scaffolding and continued working for twenty minutes until it was time for lunch. Mr. Tucker testified, "At lunch time I talked to my supervisor Wayne Lavender, and I told him that I tore up my back pulling the scaffolding and that I am going to the clinic." Mr. Tucker then proceeded to the Little Rock Medical Clinic and visited Dr. Thomas Jackson. During the visit, Dr. Jackson diagnosed a bilateral recurrent lumbar strain and administered an injection. After the three-day Memorial Day weekend, Mr. Tucker returned to work with lifting and bending restrictions.

According to Mr. Tucker, he returned to work full-time but experienced pain in his back and shooting down his legs. He stated that, pursuant to his medical restrictions, he stayed on the ground off the scaffolding and lifted as little as possible. Shortly thereafter, on June 11, 1997, he was terminated for lack of production.

Ultimately, Mr. Tucker came under the care of Dr. Scott Schlesinger. Dr. Schlesinger performed an MRI on July 7, 1997, and ordered emergency surgery the next day. Subsequent to the surgery, Dr. Schlesinger released him with a permanent impairment rating of eight percent to the body as a whole.

Wayne Lavender testified on behalf of the appellee. He acknowledged that he was working in his capacity as a supervisor on May 23, 1997, when Mr. Tucker informed him that he needed to take off work to see a doctor. However, Mr. Lavender denied being informed of the nature of the injury or any allegation that it was work-related. He testified that it was not until about two weeks later that he became aware that a compensable injury was being asserted. Mr. Lavender maintained that, if Mr. Tucker had reported a work-related injury on the day at issue, he would have taken him to the doctor's office and made sure that the proper paperwork was filed.

Tom Bordeaux, general superintendent and safety director of Roberts-McNutt, also testified. He stated that the appellee's employees are instructed to report any work-related injuries to their supervisors on the day of the injury, but that Mr. Tucker failed to report any injury on the day at issue or indicate the same on his daily time sheet. Mr. Bordeaux further testified that Mr. Tucker signed a form indicating that he worked from May 12, 1997, through May 28, 1997, without any occupational injury or illness. Mr. Tucker acknowledged this fact in his testimony, but explained that his representation on the form was not true. He stated, "It was almost a matter of reflex. Every time we get papers in our box, I'd sign them, but that is not true."

In a medical report prepared by Dr. Schlesinger, he stated that "the disc herniation at L4-5 is clearly an acute process and almost certainly caused from the accident on May 23, 1997." However, Dr. Schlesinger acknowledged that his opinion was based in part on the history given to him by Mr. Tucker.

Based on the evidence presented at the hearing, we find that the Commission erred in finding that Mr. Tucker did not suffer a compensable injury. Therefore, its decision to deny benefits must be reversed.

In its opinion, the Commission relied in part on the fact that the initial report prepared by Dr. Jackson noted "recurrent back pain," but failed to mention anything about Mr. Tucker lifting scaffolding. However, as Mr. Tucker points out, the Commission's opinion ignores the fact that a physician's report signed by Dr. Jackson on May 23, 1997, described the accident as "pulling up scaffolding from three sections high." Thus, it is evident that Mr. Tucker described the scaffolding incident to his first treating physician on the day that the incident occurred.

The Commission also relied on Dr. Schlesinger's opinion that, considering the severity of the herniation, the injury would almost certainly have prevented Mr. Tucker from performing construction work. In its opinion, the Commission stated:

> [I]t is unlikely that a person who suffered from a disc herniation the size of the claimant's as the result of an injury on May 23, 1997, would have been able to work for several weeks before having surgery.

However, there is no evidence in the record that Mr. Tucker worked for several weeks after May 23, 1997, before undergoing surgery. The evidence showed that Mr. Tucker was terminated on June 11, 1997, which would have been his twelfth workday after his injury. Furthermore, the evidence indicated that Mr. Tucker did not engage in any strenuous activity during this time span. Indeed, there was no evidence to the contrary. The medical evidence established that Mr. Tucker was placed on physical restrictions immediately following his work-related accident, and he testified without controversion that while on these restrictions he was unable to perform his job and was in constant pain. It appears that appellee concurred that Mr. Tucker could not adequately do his job, inasmuch as appellee discharged him for lack of production on June 11, 1997. Hence, the evidence failed to establish that Mr. Tucker engaged in any heavy physical activity beyond May 23, 1997.

Despite the Commission's finding that Mr. Tucker was not a credible witness, there was ample evidence to corroborate his testimony. On the morning of the accident, he told his supervisor

about having to quit work to visit the doctor, and he subsequently informed the doctor about the accident. He was immediately placed on restrictions and was unable to return to his normal work activities. Moreover, Dr. Schlesinger indicated that the herniation was caused by a single event and he related the need for surgery to the May 23, 1997, incident. While Mr. Tucker failed to report the accident when he signed the bi-weekly form provided by the appellee, he explained that he signed these forms out of habit and that the representation on the form at issue was untrue. In light of the other evidence, we find that the Commission's opinion does not display a substantial basis for denying Mr. Tucker's claim.

Reversed and remanded for an award of benefits.

STROUD and ROAF, JJ., agree.